```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA                                        REPORT AND
                                                                RECOMMENDATION
              -against-                                         10 CR 513 (BMC)

CHRISTOPHER DAVIDSON,

                      Defendant.
-----------------------------------------------------------X
```
*Gold, S., U. S. Magistrate Judge:*

## INTRODUCTION

Defendant Christopher Davidson was arrested on May 28, 2010 after the police stopped a car driven by his nephew and in which he was a passenger ("defendant's car"). Defendant, a convicted felon, was found by police officers to be in possession of a gun. According to the government, the police properly stopped defendant's car both because it had been standing in a bus stop and because its brake lights were not working properly.

On October 1, 2011, Davidson filed a motion seeking, among other things, suppression of the gun seized from him at the time of his arrest. Docket Entry 37. United States District Judge Brian M. Cogan referred defendant's motion to me for report and recommendation on July 9, 2010. I held a hearing with respect to defendant's motion on December 21, 2010. Tr. of 12/21/10 ("Tr."), Docket Entry 52-1. I issued a report orally from the bench at the conclusion of the hearing recommending that each aspect of defendant's motion be denied. Tr. 178-87. With respect to defendant's motion to suppress the gun found in his possession, I concluded that the police lawfully stopped defendant's car because its brake lights were not working properly. I rejected the prosecution's alternative argument that the car was improperly standing in a bus stop.

Defendant now moves for reconsideration of my recommendation that his motion to suppress be denied. Docket Entry 48. The government opposes defendant's motion and seeks reconsideration of my conclusion that defendant's car was not improperly standing in a bus stop. Docket Entry 52. For the reasons stated below, I decline to change either my conclusion that the car was not improperly standing in a bus stop or my conclusion that the police officers properly stopped defendant's car because its brake lights were not in good working order.

FACTS

The pertinent facts are not in dispute. On May 28, 2010, Sergeant Kenneth Zepherin and Police Officer Paul Viar were on duty and riding together in an unmarked police car. At about 6:45 p.m., the officers were stopped at a red light on New Lots Avenue at the intersection of Pennsylvania Avenue in Brooklyn. Tr. 121. New Lots Avenue has only one lane of traffic moving in the direction the police were heading. While waiting for the light to change, the officers noticed defendant's car pull up on their right side and stop for the red light in a bus stop. Tr. 121-22. A sign marking the bus stop indicates that no standing is permitted there. Tr. 16; Gov't Ex. 2.

Within moments, the light turned green and defendant's car turned right onto Pennsylvania Avenue. Tr. 123. The police followed. Officer Viar then noticed that the "inner left brake light" was not operating. Tr. 18, 126. Officer Viar explained that each of the two brake lights on the defendant's car has two bulbs, and that the interior bulb of the brake light on the driver's side did not light up when the brakes were applied. Tr. 19. The officers wrote a ticket for the brake light violation but did not issue one for standing in a bus stop. Tr. 65-66.

The police stopped defendant's car after following it for several blocks. Tr. 21, 23. The

events leading to the discovery of a gun in defendant's possession followed. Those events are not recounted here because they are not pertinent to defendant's motion for reconsideration.

DISCUSSION

A.  The Standing Violation

As indicated above, Sergeant Zepherin and Office Viar observed defendant's car pull up on their right and stop in an area designated as a bus stop with standing prohibited. Defendant's car waited there for the traffic light to turn green, and then proceeded to make a right turn. Defendant's car could have been in the "no standing" zone only very briefly because Sergeant Zepherin testified that he and Officer Viar were stopped at the intersection only "momentarily." Tr. 123. The question posed by these facts is whether it is a traffic violation for a driver who intends to make a right turn to pull out of the lane of moving traffic, enter a bus stop where standing is prohibited, and wait for the light to turn green.

At the hearing, I rejected the government's contention that defendant's car was unlawfully standing in a bus stop largely as a matter of common sense. It simply seems illogical to preclude a driver from pulling into the right-most portion of the roadway under the circumstances presented here. A driver waiting in a bus stop for a red light to turn green does not significantly delay the progress of a bus because, even if the bus stop were not blocked and the bus could enter it, the bus would still have to wait for the same light to turn green before proceeding through the intersection. More importantly, the government's construction of the rule would pose a serious safety hazard: a driver who did not pull to the right before turning would run the risk of making a right turn in front of a bus traveling straight ahead, or in the alternative would delay the progress through the intersection of all traffic behind him until the bus passed.

3

The government, quite properly, directs my attention to the governing New York City traffic rules. Those rules provide that no person may stand in an officially designated and appropriately posted bus stop except temporarily "for the purpose of expeditiously receiving and discharging passengers." 34 RCNY 4-08(b)(3). Standing is defined as the stopping of a vehicle other than temporarily to receive or discharge passengers, and stopping is defined as any halting, even momentarily, of a vehicle. 34 RCNY 4-01.

It is undisputed that, in this case, the bus stop was marked with a sign designating it as a no-standing area. It is also undisputed that defendant's car stopped there while the light was red and did not receive or discharge passengers. Nevertheless, the general provision of the New York City traffic rule prohibiting standing contains language that suggests that defendant's car was not in violation of the no standing directive. The rule prohibiting standing provides that "[n]o person shall stop, stand or park a vehicle . . . other than in accordance with authorized signs . . . or other traffic control devices, unless necessary to avoid conflict with other traffic." 34 RCNY 4-08(a)(1). Thus, the New York City traffic rule appears to permit a person to stand when he does so in obedience to a traffic signal, such as a red light, or to avoid conflict with other traffic, such as a bus on the driver's right intending to go straight ahead when the driver intends to make a right turn.

It is arguably unclear from the syntax of the New York City rule whether the reference to "other traffic control devices" is intended modify and limit the circumstances under which standing is prohibited. However, the analogous provision of the New York State law leaves no room for ambiguity. While the New York State Vehicle and Traffic Law similarly defines standing as "stopping" other than to receive or discharge passengers, N.Y. V.T.L. § 145, it

4

defines "stopping" in somewhat different terms than those used by the City traffic rules:

> Stop or stopping [w]hen prohibited means any halting even momentarily of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer *or traffic-control sign or signal.*

N.Y. V.T.L. § 147 (emphasis added). Thus, under the state law, a car is not "stopped," and therefore is not "standing," when it is waiting for a red light to turn green.

I presume the New York City rules apply to traffic violations within the City of New York. However, I note that those rules specifically enumerate the provisions of the State Vehicle and Traffic Law that do not apply in New York City, and Section 147 is not listed among them. 34 RCNY 4-02(e). I therefore infer that the drafters of 34 RCNY 4-08(a)(1) intended for their rule to be consistent with N.Y. V.T.L. § 147. Accordingly, and for all the reasons stated above, I conclude again that defendant's car did not violate any prohibition on standing while waiting in a bus stop at a red light before making a right turn.

B. The Brake Light Violation

As set forth above, after defendant's car turned right onto Pennsylvania Avenue, Officer Viar noticed that one of the two bulbs in the brake light assembly on the driver's side of defendant's car was not operating. The parties dispute whether this malfunction gives rise to a violation of the New York State Vehicle and Traffic Law.[1]

Section 376 of the Vehicle and Traffic Law provides in pertinent part as follows:

> It shall be unlawful to operate, drive or park a vehicle . . . at any time during the day or night unless such vehicle is equipped with signaling devices and reflectors . . . which are in good working condition; or to operate, drive or park a vehicle . . .

---

[1]The New York City traffic rules incorporate the provisions of Sections 375 and 376 without imposing any relevant additional requirements. 34 RCNY 4-09.

> during the period from one-half hour after sunset to one-half hour before sunrise, unless such vehicle is equipped with lamps which are lighted and in good working condition."

In short, the statute requires a car's lamps to be on and in good working condition in the dark and a car's signaling devices to be in good working condition at all times. It is undisputed that the car stop in this case did not take place within the time frame in Section 376 applicable to lamps. Thus, a violation of Section 376 occurred only if brake lights are signaling devices and not lamps, and only if, when one of two bulbs in a single brake light assembly is inoperable, the brake light is not "in good working condition."

At the conclusion of the hearing, I determined that the inoperable bulb in the brake light assembly of defendant's car resulted in a violation of Section 376. Tr. 175. I based my decision on the plain language of the statute. My reasoning was that a brake light is a signaling device and not a lamp because it is intended not to illuminate but to communicate; that is, unlike a headlight that provides visibility to the driver, a brake light signals following drivers that the car is slowing down and may be coming to a stop. I further concluded that, as a matter of plain meaning, a brake light with an inoperable bulb is not "in good working condition."

In his motion for reconsideration, defendant challenges both aspects of my reasoning. First, defendant points out that Section 375 of the Vehicle and Traffic Law, which describes the equipment a car must have, refers to brake lights as "stop lamps." N.Y. V.T.L. § 375(40). Defendant argues that the two sections, 375 and 376, should be read together, and that the reference to brake lights as "lamps" in Section 375(40) supports the conclusion that brake lights fall within the scope of Section 376, if at all, as lamps and not signaling devices.

While defendant's argument has some appeal, I reject it because it would render Section

376 nonsensical. As defendant acknowledges, Section 376 requires that lamps be "lighted" from shortly after sunset to shortly before sunrise. Even after dark, though, brake lights are "lighted" only when brakes are applied. Moreover, operable brake lights are an important safety feature at all times and not only after dark, and a reading of Section 376 that requires that they be in good working condition only in the dark simply makes no sense.

Defendant also argues that the brake lights on defendant's car were in good working condition because each had at least one operable bulb. The statute does not define "good working condition." To give meaning to the phrase, defendant again directs my attention to Section 375(40), and in particular to its requirement that brake lights be "visible at least five hundred feet from the rear of the vehicle when the brake of such vehicle is applied." Defendant contends that, because this is the only specific requirement applicable to brake lights, the brake lights on defendant's car were in good working condition if they were visible from five hundred feet. Because the government did not establish that the brake light with the missing bulb was not visible from that distance, argues defendant, it did not establish that the brake light was not in "good working condition."

I do not agree that any brake light that meets the requirement of Section 375(40) is as a result in "good working condition." One might imagine, for example, a brake light with a short circuit that causes it to blink repeatedly rather than to light steadily. While the blinking light might be readily visible from five hundred feet, no one could reasonably argue that it was in good working condition. For all these reasons, I am not persuaded to alter my view that the brake light on defendant's car was a signaling device that was not in good working condition in violation of

Section 376(1)(a).[2]

Even if the condition of the brake light on defendant's car did not give rise to a violation of Section 376(1)(a), I conclude that the police could lawfully have stopped the car pursuant to Section 375(40). As pointed out above, Section 375(40) requires that brake lights be visible from a distance of five hundred feet. Defendant contends that, to rely on Section 375(40), the government must prove that the driver's side brake light on defendant's car was not visible from the stated distance. However, the Second Circuit has "held repeatedly that a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment." *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009). Thus, the relevant question is whether an officer observing the malfunctioning brake light might reasonably suspect that it could not be seen from five hundred feet. Reasonable suspicion is a less demanding standard of proof than probable cause, and requires only "articulable facts" suggesting that "criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted). The brake light assembly on defendant's car was designed to operate with two bulbs lighting a single lens. Thus, a police officer observing that one of the bulbs was not functioning might reasonably suspect that, absent the additional wattage of the second bulb, the brake light assembly no longer satisfied this visibility requirement.[3] For this reason as well, it was proper for the police to stop

---

[2]The parties have not found any useful case law construing the Vehicle and Traffic Law sections at issue, and the Court's research has not revealed any helpful precedents either. The government has cited a decision referring to a brake light as a signaling device within the meaning of Section 376, *People v. Condon*, 891 N.Y.S.2d 221 (App. Term 2009), but the reference is *dicta*.

[3]That Sergeant Zepherin and Officer Viar may not have analyzed the reasons why the inoperable brake light bulb gave rise to violations of Sections 375 and 376 in the same way I have in this report is of no moment. The Supreme Court has held that "the constitutional

defendant's car and investigate further.

CONCLUSION

It seems odd that a question as profound as whether a defendant's Fourth Amendment rights have been violated should be resolved by finely parsing the wording of traffic rules. At least here, though, the result I recommend is consistent with my view that the police officers acted reasonably when they stopped defendant's car and that they resorted to more intrusive investigative methods only as unfolding circumstances warranted. Accordingly, having considered the authorities cited and arguments made by the parties, I continue to recommend that defendant's motion to suppress the gun seized from him at the time of his arrest be denied.

Any objections to this Report and Recommendation must be filed within 14 days of this Report and in any event no later than March 14, 2011. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

_____s/_____
**STEVEN M. GOLD**
**United States Magistrate Judge**

**Brooklyn, New York**
**February 25, 2011**

U:\davidson 022211.wpd

---

reasonableness of traffic stops" does not depend "on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). To the contrary, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* (quoting *Scott v. United States,* 436 U.S. 128, 138 (1973)). *See also Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005).